IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BETTY HOFFMAN, EDWARD HOFFMAN,** ) <br> **DORIS MURRAY, JOSLYN DAY** and ) <br> **KEISHA CHAVERS,** on behalf of ) <br> themselves and all others ) <br> similarly situated, ) <br>                Plaintiff, ) <br> ) <br>   v.                          )    Nos. 07 C 4916 <br> ) <br> **OPTION ONE MORTGAGE CORPORATION** ) <br> and **H&R BLOCK MORTGAGE CORP.,** ) <br> **n/k/a OPTION ONE MORTGAGE** ) <br> **SERVICES, INC.,** ) <br> ) <br>                Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs' amended and consolidated class action complaint ("complaint") alleges violations of: the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.* (count I); and the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.* (count II). Defendants Option One Mortgage Corp. ("Option One") and H&R Block Mortgage Corp. ("H&R Block Mortgage") have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) arguing that: (1) the disparate impact claims are deficient under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); (2) plaintiffs have failed to allege a specific policy or disparate impact; (3) third-party brokers' intervening superseding acts negate Option One's liability; and (4) disparate impact claims are not cognizable under

the FHA or the ECOA.  For the following reasons, the motion is denied.

Although defendants save it for last, I must first address the existence of disparate impact claims under the FHA and the ECOA. Defendants argue that *Alexander v. Sandoval*, 532 U.S. 275 (2001) and *Smith v. City of Jackson*, 544 U.S. 228 (2005) "compel[] the conclusion here that neither ECOA nor the FHA permits disparate impact claims" because they do not contain "the language that authorizes disparate impact claims[.]" (Defs.' Mem. at 20-24.) Neither *Alexander* nor *Smith* address the FHA or the ECOA.  *See Alexander*, 532 U.S. at 280-82, 285-86, 293 (confirming that § 601 of Title VI of Civil Rights Act of 1964 prohibits only intentional discrimination, assuming for purposes of instant case that § 602 may validly proscribe activities that have disparate impact on racial groups even though such activities are permissible under § 601, and holding that no private right of action to enforce regulations promulgated under § 602 exists); *Smith*, 544 U.S. at 232, 240 (holding that Age Discrimination in Employment Act ("ADEA") authorizes recovery in disparate impact cases (although scope of disparate impact liability under ADEA is narrower than under Title VII), but concluding petitioners did not set forth valid disparate impact claim).  Defendants cite no cases holding that the FHA and the ECOA do not permit disparate impact claims.

The Seventh Circuit has found that "a discriminatory effect, without any discriminatory intent, *may*" violate the FHA. *Gomez v. Chody*, 867 F.2d 395, 401-02 (7th Cir. 1989) (emphasis in original) (affirming summary judgment for defendants). Moreover, defendants "recognize that a number of district courts have held that disparate impact claims are cognizable under the ECOA and the FHA" post-*Smith* and *Alexander*. (*Id.* at 24 n.13.); *see, e.g., Zamudio v. HSBC N. Am. Holdings Inc.*, No. 07 C 4315, 2008 WL 517138, at *2 (N.D. Ill. Feb. 20, 2008) (Darrah, J.) (concluding that *Smith* "does not reach so far as to prohibit disparate-impact claims under other statutes that do not contain this same language, nor does it set forth a new test for determining whether a statute supports disparate-impact claims"); *Ramirez v. Greenpoint Mortgage Funding, Inc.*, No. C08-0369 THE, 2008 WL 2051018 at *3-4 (N.D. Cal. May 13, 2008) (same); *Beaulialice v. Fed. Home Loan Mortgage Corp.*, No. 8:04-CV-2316-T-24-EAJ, 2007 WL 744646, at *4 (M.D. Fla. Mar. 6, 2007) (concluding that neither *Smith* nor *Alexander* prohibit disparate impact claims, allowing plaintiff to bring disparate impact claim under FHA, and assuming without deciding that plaintiff could bring disparate impact claim under ECOA). I too conclude that *Alexander* and *Smith* do not preclude disparate impact claims under the FHA and the ECOA.

Plaintiffs must identify a specific practice or policy responsible for the disparate impact. *See Smith*, 544 U.S. at 241

(explaining that it is insufficient to point to general policy, but rather plaintiff must isolate specific practice allegedly responsible for statistical disparities). Defendants argue that plaintiffs have not identified a specific policy, but rather attack defendants' overall loan pricing policies. But the complaint focuses on the subjective charges assessed pursuant to defendants' "Discretionary Pricing Policy" ("Policy") - not the overall pricing process, which also encompasses charges imposed based on "objective risk-related" criteria. (Compl. at ¶¶ 50-67.)

Defendants also contend that plaintiffs have not sufficiently alleged a disparate impact. Defendants challenge plaintiffs' reliance on industry-wide data and studies that do not support allegations that defendants engaged in discriminatory lending practices. The complaint generally relies on data and studies to set forth a history of discrimination in mortgage lending. (*See* Compl. at ¶¶ 21-46.) Plaintiffs claim that certain of the studies are based in part on defendants' loan data (pls.' resp. at 14) although the complaint contains no such allegations. The complaint alleges that, "Statistical analysis of discretionary charges imposed on minority and white customers of other mortgage companies that use credit pricing systems structured like that of Option One and/or H&R Block Mortgage has revealed that minorities, after controlling for credit risk, are substantially more likely than similarly situated whites to pay such charges." (Compl. at ¶ 63.)

Defendants acknowledge, however, that at least one of the studies included H&R Block Mortgage, but not Option One "which was responsible for all but one of the loans at issue in this suit." (Defs.' Reply at 6-7.) The complaint alleges that Option One made mortgage loans with H&R Block, Inc.'s ("H&R Block") and H&R Block Mortgage's participation, and H&R Block Mortgage made mortgage loans with H&R Block's and Option One's participation. (Compl. at ¶¶ 48-49.) The complaint further alleges that the subjective charges imposed under the Policy disproportionately adversely affect minorities. (*Id.* at ¶¶50-67.) Defendants also contend that general allegations regarding the payment of yield spread premiums or other broker compensation and the use of adjustable rate mortgage products do not support a disparate impact claim, but the crux of the complaint is that plaintiffs paid more subjective charges for their loans than white borrowers as a result of the Policy. Defendants further assert that the complaint fails to "allege a statistical disparity" because plaintiffs do not allege that they have the same risk-related factors as similarly-situated white persons, but the complaint challenges only those fees based on subjective as opposed to risk-related factors. Overall, these allegations are sufficient to withstand dismissal.

Defendants additionally claim that the intervening superseding acts of third-party brokers in negotiating loan terms negate proximate causation as to Option One. Defendants rely in part on

5

the April 28, 2008 hearing transcript and order in a case previously before me, *Ware, et al. v. Indymac FSB, et al.*, Case No. 07 C 1982, in which I denied an untimely motion to amend a complaint to add allegations of discrimination in broker compensation against the defendant lender as too conclusory to survive a motion to dismiss where the plaintiffs' counsel had stated that he did not have evidence to support the claim. (Defs.' Mem. Ex. B.) Here, the complaint alleges the specific policy at issue. The complaint further alleges that: the Policy was "established" by defendants; the "[l]oan officers and brokers had discretion, within the limits set by the Defendants, to impose discretionary mark-ups as additional points in interest - 'a rate mark-up', or as points, fees or other charges on the loan [and] [w]hen there was a rate mark-up, the Defendants received additional income[;]" the loan officers and brokers were defendants' "agents . . . for the purpose of setting credit price, which always was set based on the Defendants' policy[;]" the Policy disproportionately adversely affected minorities; the disparate impact resulted from the Policy "in that the Defendants designed, disseminated, controlled, implemented and profited from" it; and, "[o]n information and belief," plaintiffs were "subject to" the Policy. (Compl. at ¶¶ 50, 61, 63, 64, 65, 78, 88, 102, 113.) Defendants characterize the brokers as "independent," but the complaint alleges a different relationship. Based on these allegations, I

find that plaintiffs have sufficiently alleged causation as to Option One.

                              ENTER ORDER:

                              _____
                              **Elaine E. Bucklo**
                              **United States District Judge**

DATED: December 9, 2008